Gideon T. Carter, a colored man, died in June, 1942. He left a widow, Virginia Jones Carter, from whom he had been living separate and apart almost ever since his marriage to her in 1924. He also left seven grandchildren, issue of a predeceased daughter of the deceased by a previous marriage, and one son, issue of his marriage to the present surviving widow.
In July, 1942, the surviving widow filed a petition asking to be appointed administratrix, and an inventory was made showing the total value of the estate to be $1,555.50. Rebecca Robinson Johnson, a granddaughter of the deceased, filed a petition in the succession proceedings, alleging that no administration was necessary, *Page 45 
but if an administration was found to be necessary, that she was entitled to be appointed to this position in preference to the widow. In June, 1943, a judgment was rendered declaring an administration necessary and appointing Rebecca Robinson Johnson administratrix. She qualified in due course.
In May, 1944, the widow, Virginia Jones Carter, filed a petition in the proceedings, alleging that Rebecca Robinson had been appointed administratrix; that at the time of the death of her deceased husband she was receiving and had been awarded by order of court for her support a pension in the sum of $16 per month; that she is at the present time in necessitous circumstances and has no means of support, except a small allowance from her son in the army; that she has not received since the death of her husband the pension allowed her by the court, and that she is entitled to receive out of the succession a monthly allowance for her support in accordance with Act No. 113 of 1926, amending Civ. Code, art. 2382; that such allowance should be based on the apparent amount of the marital fourth at five per cent per annum interest, and should the marital portion or the $1,000 widow's homestead as finally fixed, not yield the revenue equal to the allowance as fixed by the court, the widow shall be charged with, and there shall be deducted from the marital portion, or the $1,000 homestead, the amount of such deficiency. She prayed for the citation of the administratrix and for judgment fixing the allowance at the amount she was receiving before her husband's death, and for general and equitable relief.
An exception of no cause and no right of action was filed to this petition by the administratrix, but before any action was taken on the exception, Rebecca Robinson Johnson died, and her brother, George Robinson, filed a petition to be appointed administrator. The widow filed an opposition to this petition and alleged that as the surviving spouse of the deceased she is a creditor of the succession for her marital portion under Article 2382 of the Civil Code and for a widow's homestead under Article 3252 of the Civil Code whichever the court may decide to be applicable as both articles are in pari materia. In due course a judgment was rendered appointing George Robinson Administrator and he qualified as such.
In June, 1945, the widow filed a petition against this administrator claiming an allowance and used almost the identical language as was used in her previous petition against the deceased administratrix. To this second petition, the administrator Robinson filed an exception of no cause or right of action, which exception was referred to the merits. An answer was filed by the administrator, making a general denial. A judgment was rendered in February, 1946, overruling the exception, and recognizing Virginia Jones Carter as surviving spouse in necessitous circumstances and entitling her as such to the usufruct of one-fourth of the estate of the deceased. The administrator has appealed.
 Exception Of No Cause Or Right Of Action
This exception is based on the ground that the petition does not allege that the widow was in necessitous circumstances at the time of her husband's death; that there is no law permitting the payment of alimony fixed by order of court to be continued or paid out of his succession after the man dies; that the petition does not show any facts by which it could be determined whether or not the deceased died rich so as to entitle the widow to the marital portion.
[1, 2] There is considerable merit in the exception. However, if we take into consideration all the pleadings filed by the widow in this succession, it can be reasonably inferred that the relief she seeks is an allowance under Article 2382 of the Civil Code, as amended by Act No. 113 of 1926, to be paid under the provisions of that article as amended; or, she is asking for the widow's homestead or privilege as provided for in Article 3252 of the Civil Code. This conclusion can be drawn from the pleadings which have been referred to above. As the trial judge states, the pleadings are very confusing, but under our liberal system of pleading, the widow *Page 46 
was entitled to show the facts as they existed at the time of her husband's death. The most that could be done with the exception would be to require the petition to be amended so as to show the necessary facts. The widow could have proceeded by rule to have the allowance fixed under Act No. 113 of 1926, and it is obvious from the language used in permitting the surviving spouse to ask for a periodic allowance out of the succession during its administration that no formal petition is required to bring the claim before the court. See Barrett v. Pierson, 163 La. 541, 112 So. 410.
 Merits
[3] The condition of the widow and the value of the succession at the time of the death of the deceased must control in determining whether or not she was in necessitous circumstances and whether or not the husband died rich within the contemplation of Article 2382 of the Civil Code. The value of the property of the deceased as shown by the inventory taken shortly after his death is fixed at the sum of $1,555.50. When her husband died, the widow had a small lot of ground for which she paid the sum of $56.50, and on which she subsequently built a small house. She was making $6 per week and her son was working at Dalton's making about $7 per week, most of which he gave to his mother for her support.
[4, 5] Under this state of facts it could hardly be said that Carter died rich as compared to the station in life and income of his widow. She was not in any more necessitous circumstances at the time of his death than he was. It is true that he was paying her alimony in the sum of $16 per month under an order of court rendered in 1925 when her child was very young. We doubt if the court would have compelled him to pay this alimony had the matter been brought up just before Carter died. At that time the child was no longer a care on the mother, but was making his own way and assisting in the support of his mother. There is no law which requires that the succession of a deceased husband can be forced to continue payments of alimony which the deceased was paying at the time of his death.
The case most favorable to the widow's position is that of Moore v. Succession of Moore, La. App., 7 So.2d 716, where the court allowed a husband in necessitous circumstances to take from the succession of his deceased wife the one-fourth, the wife's succession having a net value of only $2,000. However, in that case the surviving spouse was 68 years old and had no property and practically no means of support, and there were no children left by the deceased.
There was an effort made to show that the property of the deceased husband was worth several thousand dollars. However, these valuations were based on prices existing at the time the case was tried in 1946, and not on values in 1942 when Carter died. If 1946 prices were to be considered, the widow herself testified that her property was then worth two or three thousand dollars, she having built a house on her lot since the death of Carter in 1942.
There is also evidence in the record to show that the claimant was living in the house with another man and was taking care of his children for which she was receiving three dollars per week. The deceased Carter was a preacher among his race, and the evidence indicates that he did not get over $25 to $30 per month for his services. He had no greater financial income before his death than she did, and soon after his death she began to receive $37 per month from her son who was in the Army for over three years.
From the facts in the case we are unable to see how the claimant is jusified in claiming the marital portion, nor do we see how she is entitled to receive the one thousand dollars allowed to a widow in necessitous circumstances under the provisions of Article 3252 of the Civil Code.
For the reasons assigned, the judgment appealed from is hereby reversed and set aside, and the demands of Virginia Jones Carter are rejected and her claim is dismissed at her costs in both courts. *Page 47